# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CEDRIC YOUNG,

          Plaintiff,

  v.

WAYNE CHOINSKI, JEFFREY McGILL,
TERANCE ROSE, VALERIE LIGHT,
SCOTT SALIUS, JASON HARTLEY, and
JAMES WILLIAMS,

          Defendants.

Civil Action No.
3:10-CV-606 (CSH)


SEPTEMBER 16 , 2014


**RULING ON DEFENDANTS' MOTION FOR RECONSIDERATION**

**HAIGHT, Senior District Judge:**


## I.  INTRODUCTION

Plaintiff Cedric Young, a prisoner incarcerated at the Northern Correctional Institution ("NCI") in Somers, Connecticut, commenced this civil rights action *pro se* pursuant to 42 U.S.C. § 1983.  He alleges that the defendants, prison officials and personnel (collectively "Defendants"), were deliberately indifferent to his serious medical and mental health needs on September 3, 2008, constituting cruel and unusual punishment in violation of the Eighth Amendment.  Defendants moved for summary judgment and the Court granted that motion in part and denied it in part.[1]

---

[1]  Familiarity with that Ruling [Doc. 50], including the detailed facts set forth therein, is assumed.  Although the Ruling is reported at __ F.Supp. 2d __, 2014 WL 962237 (D.Conn. Mar. 13, 2014), the Court will cite, as do Defendants, to Doc. 50 herein.

Defendants now move on behalf of individual defendants Jason Hartley and James Williams, Correctional Officers at NCI, for reconsideration of the Court's denial of summary judgment on the claims that each Officer was deliberately indifferent to Young's serious mental health needs on September 3, 2008.  Doc. 51.

## II.  <u>STANDARD FOR RECONSIDERATION</u>

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995)  (citing, *inter alia*, *Schonberger v. Serchuk*, 742 F.Supp. 108, 119 (S.D.N.Y.1990)).  The Second Circuit has adhered to the strict standard for reconsideration set forth in *Shrader. See, e.g., Mir v. Shah,* No. 13–55, 2014 WL 2722767, at *1 (2d Cir. June 17, 2014) (quoting *Shrader,* 70 F.3d at 257).  The Rules of Civil Procedure in this District dictate that "[m]otions for reconsideration . . . shall be accompanied by a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order." D. Conn. L. Civ. R. 7 (c)(1).

It is well-settled that a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir.1998)), as amended (July 13, 2012), *cert. denied*, 569 U.S. ——, 133 S.Ct. 1805 (2013)).  *See also Shrader,* 70 F.3d at 257 (a motion for reconsideration "should not be granted where the moving party seeks solely to relitigate

an issue already decided"); *Stoner v. Young Concert Artists, Inc.*, No. 11–CV–7279, 2013 WL 2425137, at *1 (S.D.N.Y. May 20, 2013) ("A motion for reconsideration is an extraordinary remedy, and this Court will not reconsider issues already examined simply because [a party] is dissatisfied with the outcome of his case. To do otherwise would be a waste of judicial resources.") (citations and internal quotation marks omitted)).

It thus follows that "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"   *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992) (quoting  18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790), *cert. denied*,  506 U.S. 820 (1992).  *See also Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (same).

### III.  <u>PENDING MOTION</u>

Defendants base their pending motion for reconsideration [Doc. 51] on two grounds.  First, they contend that "there is no evidence in this record that Correction Officer Hartley 'kn[e]w of and disregarded an excessive risk to inmate health." Doc. 51-1, p. 1.  Defendants argue that absent such "a material element for a deliberate indifference claim," Officer Hartley could not have been deliberately indifferent to Young's mental health needs.  *Id.*

Second, Defendants argue that Officer Williams could not have been deliberately indifferent to Plaintiff's mental health needs because:   the Second Amended Complaint does not specifically allege that claim; and, in any event, Plaintiff's deposition testimony disavows such a claim.  *Id.*, p. 2 (citing Doc. 45-2 (Young Deposition), p. 14).

The Court will address each alleged ground for reconsideration in turn.

## IV.  DISCUSSION

**A.    Hartley**

With respect to Plaintiff's Eighth Amendment claim against Officer Hartley for deliberate indifference to serious mental health needs, Defendants argue that the subjective component to the "deliberate indifference" standard is missing.  Doc. 51-1, p. 3 (citing *Hathaway v. Coughlin*, 37 F. 3d 63, 66 (2d Cir. 1994)).   Specifically, they assert that Officer Hartley was not actually aware of a substantial risk that Young would suffer serious harm as a result of Hartley's  alleged inaction. Doc. 51-1, p. 3.  Defendants recognize that a subjective knowledge of substantial risk exists when there is a "strong likelihood, rather than a mere possibility" that failure to provide care will result in harm to a prisoner.  *Id.* (citing Doc. 45-2, p. 9).  Moreover, they contend that no liability may arise "if risk of suicide is speculative."  Doc. 51-1, p. 3.  To make a showing of a strong likelihood of suicide, Defendants argue that there must have been a previous or earlier attempt at suicide.  Doc. 51-1, p. 3-4 (citing, *inter alia, Jean v. Barber*, No. 9:06cv430, 2011 WL 2975218, at *5 (N.D.N.Y. July 21, 2011)).  Defendants then go one step further to conclude that knowledge of a prior suicide threat or attempt is necessary for subjective "deliberate indifference" to an inmate's serious mental health needs.  They reason that because no party has demonstrated notice to Hartley of Young's prior suicide attempts, there must be summary judgment in Hartley's favor on this count.[2]

As set forth below, however, Defendants present no controlling authority that dictates that

---

[2]  Young, who  is  a  *pro se* litigant,  filed  no  response to Defendants' present motion for reconsideration of the summary judgment ruling.  The Court examined his Amended Complaint and deposition testimony in order to discern Plaintiff's version of the pertinent facts.

4

a guard must have knowledge of an inmate's prior suicide attempts or threats to be held liable for deliberate indifference to serious mental health needs.  Rather, Defendants cite non-controlling authorities and conflate those court's discussions of the subjective and objective components of the "deliberate indifference" standard in cases of failure to prevent suicide.   In particular, Defendants quote language regarding proof of objectively serious mental health needs (with respect to suicide) and construe that language as a threshold test for a guard's *subjective* knowledge of an inmate's serious mental health needs.  Defendants' argument is flawed.  It disregards the reality that analyzing a guard's actual knowledge of an inmate's mental health needs involves *all* relevant facts.  Although knowledge of prior suicide attempts may be  relevant, especially in cases where the inmate has actually committed suicide, there is no binding authority in the Second Circuit that such knowledge is the *only* fact, or even a *threshold* fact,  for the s*ubjective* prong as to all serious mental health needs.  Each case turns on its particular facts.  For example, where a guard actually witnesses an inmate in the process of injuring himself, having a severe anxiety attack, or threatening to commit suicide, such circumstances may suffice for a finding of subjective deliberate indifference to serious mental health needs.

To clarify, the Court reiterates that there are both objective and subjective requirements to succeed on an Eighth Amendment claim regarding serious mental health needs.  First, the danger posed by the deliberate indifference must be "sufficiently serious" from an *objective* perspective; and second, the defendant must have acted with deliberate indifference to that need (*i.e.*, *subjectively* failed to address the danger).  *See, e.g.,  Smith v. Fischer*, 500 F.App'x 59, 61 (2d Cir. 2012) (citing *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002)); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied sub nom., Foote v. Hathaway*, 513 U.S. 1154 (1995).

As to the objective component, "the alleged deprivation of adequate medical care must be 'sufficiently serious.'" *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir.2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). *See also Spavone v. New York State Dep't of Corr.*, 719 F.3d 127, 138 (3d Cir. 2013) (same). Moreover, "[a] condition is objectively serious if it 'pose[s] an unreasonable risk of serious damage to [a prisoner's] future health.'" *Guilbert v. Sennet*, 235 F. App'x 823, 826 (2d Cir. 2007) (quoting *Phelps*, 308 F.3d at 185 (internal quotation marks omitted)). In the context of mental health needs, propensities to attempt suicide, harm oneself, and/or exhibit severe depression or anxiety attacks have been viewed as "sufficiently serious." *See, e.g.*, *Barnes v. Ross*, 926 F. Supp. 2d 499, 506 (W.D.N.Y. 2013); *Jones v. Rock*, No. 9:12–cv–0447 (NAM/TWD), 2013 WL 4804500, at *15 (N.D.N.Y. Sept. 6, 2013); *Allah v. Kemp*, No. 9:08–CV–1008 (NAM/GHL), 2010 WL 1036802, at *6, n. 9 (N.D.N.Y. Feb.25, 2010) .

"The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138. There must be "proof of actual knowledge of risk by the prison official*." Cash v. County of Erie*, 654 F.3d 324, 341 n.8 (2d Cir. 2011)(citing *Caiozzo v. Koreman*, 581 F.3d 63, 70–71 (2d Cir. 2009)). In analyzing proof of a prison guard's subjective knowledge, the guard must both know of and disregard "an excessive risk" to the inmate's "health or safety" – that is, be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . draw the inference." *Phelps*, 308 F.3d at 185-86. Such knowledge may be inferred "from circumstantial evidence." *Id.* at 186. The prison guard's "awareness [of the risk of harm] may be proven from the very fact that the risk was obvious" under the circumstances. *Spavone*, 719 F.3d at 138 (quoting *Farmer*, 511 U.S. at 842).

1.      <u>**Non-controlling Authorities Presented:**  *Jean v. Barber* **and** *Greffey v. State of Alabama Dep't of Corr.*</u>

Defendants focus on the language of two non-controlling district court cases to argue that, as to the subjective component of deliberate indifference to serious mental health needs,  a guard's knowledge of prior suicide threats is an essential element.  Defendants contend that this Court must apply that test in the case at bar.  However, if examined carefully, neither *Jean* nor *Greffey* lays down such a "bright line" mandate.  Furthermore, even were this Court to construe *Jean* and  *Greffey* as Defendants suggest, neither the Second Circuit nor the United States Supreme Court has articulated such a rule. Absent binding authority, the Court refrains from applying a new standard of law.

a.      <u>*Jean v. Barber*</u>

First, Defendants cite *Jean v. Barber*, a 2011 case in the Northern District of New York, to argue that a prison guard must have actual notice of prior suicide attempts to be held liable for an Eighth Amendment violation.  *See Jean v. Barber*, No. 9:06cv430, 2011 WL 2975218, at *5 (N.D.N.Y. July 21, 2011)).   However, in that case, District Judge D'Agostino's focus on the existence of prior suicide threats bore directly on the issue of whether the inmate possessed a sufficiently serious mental health need – the objective factor.[3] Judge D'Agostino thus stated that with respect to a prisoner's Eighth Amendment claim,  "[i]n order to establish a strong likelihood of

_____

[3]      The  fact  that  Judge  D'Agostino discussed prior suicide threats or attempts under the heading of "Subjective Prong" may have given rise to Defendants' confusion regarding the two prongs.  It is likely the judge  chose to include the background discussion about the objective prong under the "subjective" heading because she gave appropriately cursory treatment to the "objective prong"  where the magistrate judge had already found "plaintiff ha[d] satisfied the objective prong of his Eighth Amendment challenge."  2011 WL 2975218, at *5.  Nonetheless, Judge D'Agostino plainly stated that prior suicide threats or attempts "establish a strong likelihood of suicide," *id.*, which is language pertaining to the objective prong.

7

suicide, a detainee must have made a previous threat or an earlier attempt at suicide." 2011 WL 2975218, at *5. Defendants misconstrue, and extend, this language regarding an objective risk of suicide to require that, in order for a guard to be held liable for deliberate indifference to serious mental health needs, he must have subjective knowledge of previous suicide threats or attempts. Judge D'Agostino did not, however, make such a broad ruling.

In support of her proposition regarding the objective "strong likelihood of suicide," Judge D'Agostino cited as authority and quoted *Burke v. Warren County Sheriff's Dept.*, No. 90–CV–597, 1994 WL 675042, at * 6 (N.D.N.Y. Nov. 25, 1994). In *Burke*, Judge Munson also explicitly focused on the seriousness of the mental health need – *i.e.*, the *objective* prong of the prisoner's Eighth Amendment claim. In particular, Judge Munson discussed prior suicide attempts with respect "to the objective component of the deliberate indifference standard" – *i.e.*, to determine whether there was a "sufficiently serious deprivation" or "strong likelihood of suicide." 1994 WL 675042, at * 6. Judge Munson essentially equated a "sufficiently serious deprivation" with a "known medical problem" – in that case, suicide – and then addressed both the subjective and objective elements together, concluding that the defendant prison guards could not be held liable in *Burke* where "there was insufficient evidence in the record to allow a rational jury to find the [the defendants] knew of and disregarded an excessive risk to [the prisoner's] health." *Id.* In so concluding, Judge Munson examined *all* of the relevant facts to conclude that where "the only indication that [the prisoner] was suicidal came from [his] very withdrawn and not communicative attitude at his June 28 arraignment," there was no "strong likelihood the [he] was a suicide risk."[4]

_____

[4] In *Jean,* Judge D'Agostino also cited *Elliott v. Cheshire County, N.H.*, 940 F.2d 7, 11 (1st Cir. 1991), for the necessity of previous suicide threats or attempts in order to establish "a strong likelihood of suicide." 2011 WL 2975218, at *4. In *Elliott,* the First Circuit actually upheld

*Id.*

Likewise, in *Jean* the court examined the pertinent facts,  recognizing that assessment of the "subjective prong" also includes examining the guard's actual behavior in response to the plaintiff's alleged serious mental health needs. Specifically, "[n]on-medical personnel may engage in deliberate indifference if they *intentionally deny or delay access to medical care*," 2011 WL 2975218, at *5 (emphasis added) (citations omitted), as Young claims in this action.   The *Jean* court performed a fact-specific analysis to conclude that summary judgment was proper where  "the record does not indicate that plaintiff made any previous suicide threats" but "makes clear that defendants promptly responded to plaintiff's suicide threat," and that [the prison guard] "continued to observe plaintiff until the conclusion of his shift at 3:00 p.m."[5]  *Id.*

In sum, in finding no "deliberate indifference," the *Jean* court discussed the absence of  prior suicide attempts with respect to the objective prong but also examined the guard's response to the inmate's alleged mental health needs on the occasion in question. In contrast to *Jean*, Young had a documented history of mental illness at NCI.  Moreover, unlike the guards in *Jean*, Hartley did not promptly respond to Young's suicide threat and did not monitor him throughout Hartley's shift.

---

the district court's denial of summary judgment for the prison guards despite the finding that "there was no evidence that the corrections personnel had actual notice of [Plaintiff's] need for protection against himself" except for possible reports from fellow prisoners that they heard plaintiff say he wanted to take his life. 940 F.2d at 11.  Elliott had made no direct suicide threats to the guards and exhibited no behavior indicating he was preparing to hang himself overnight.  Under such circumstances, evidence of prior suicide threats would have been the *only* proof that the guards knew Elliott was in danger of suicide on the night in question.

[5]   The *Jean*  court never addressed the  guard's subjective knowledge of a prior suicide threat because there was no indication that any such threat had been made.  2011 WL 2975218, at *5 ("In the present matter, the record does not indicate that plaintiff made any previous suicide threats.").

9

Rather, Hartley said, "All right," hung up the phone, and failed to answer (and perhaps ignored) Young's repeated efforts to call him thereafter.  Doc. 45-3, p. 12.  Were this Court to perform the *Jean* analysis in  the case at hand, it would find that Plaintiff had a long history of mental health illness at NCI, including prior suicide threats and attempts, *i.e.*, an objectively "strong likelihood" of suicide or serious mental illness;  and, when actually confronted with Young's suicide threats on the night of September 3, 2008,  Hartley did nothing to protect or monitor Young or to obtain mental health  assistance for him.

### b.  *Greffey v. State of Alabama Dep't of Corr*.

Defendants also cite a case in the Northern District of Alabama, *Greffey v. State of Alabama Department of Corrections*, 996 F.Supp. 1368, 1382 (N.D. Ala. 1998), for the proposition that defendants in a "deliberate indifference" to serious mental health needs case "must know of a previous threatened or attempted suicide, among other things."  Doc. 51-1, p. 4.  An examination of that case reveals that *Greffey* simply adopted a composite list of factors set forth in a University of Toledo Law Review article, discussing incidents of inmate suicide and four "threshold considerations" which "entitled [them] to protection from self-destruction" under § 1983.  *See* James E. Robertson, "Fatal Custody: A Reassessment of Section 1983 Liability for Custodial Suicide," 24 U. Tol. L. Rev. 807, 816–19 (1993).  As in *Jean*, both the *Greffey* court and the author of the cited law review article combined their discussions of objective and subjective deliberate indifference. With all due respect to these authorities, their views on whether a particular list of factors indicates a "strong likelihood of suicide " is not binding authority on this Court.[6]  Furthermore, the Court

---

[6]    In  *Greffey*,  the court relied heavily on  the Eleventh Circuit's statement  that  "[i]n the absence of a previous threat of or an earlier attempt at suicide, we know of no federal court in the

emphasizes once again that in the case in suit, Young did not commit suicide, but allegedly exhibited a variety of symptoms of serious mental health problems on September 3, 2008.

This Court is bound only to follow the holdings of the Court of Appeals for the Second Circuit and the United States Supreme Court, neither of which has issued a narrow mandate requiring a prison guard to possess  knowledge of  "prior suicide attempts" to be held liable for deliberate indifference to any serious mental health need.[7]   Rather, once the objective prong is established  (*i.e.*, plaintiff suffers from a "sufficiently serious" mental health need), the Second Circuit employs a factual analysis to determine whether each charged official has acted with a

_____

nation or any other court within this circuit that has concluded that official conduct in failing to prevent a suicide constitutes deliberate indifference." 996 F.Supp. at 1382 (quoting *Edwards v. Gilbert*, 867 F.2d 1271, 1275 (11th Cir. 1989)).  The present case, however, does not involve a "fail[ure] to prevent a suicide."  Rather, Young is alive and  alleges failure by Defendants to render mental health assistance during an episode of attempted self-harm and emotional turmoil.

Furthermore, in *Edwards*, the juvenile inmate was "seemingly sleeping" before hanging himself with a bed sheet, without any threat or prior attempt at suicide. *Id.* at 1277. "Also, there was no evidence of unusual behavior." *Id.* at 1275.  Under those circumstances, the Court found the guards "entitled to immunity" with respect to an action brought by the inmate's estate under 42 U.S.C. § 1983. 867 F.2d at 1277.  In contrast to the facts in *Edwards,* Young actually notified the guards of his suicidal ideation and visibly attempted to harm himself.  The two cases cannot be factually equated.

[7]  Taken  as  a  bright-line rule, Defendants'  proposed mandate would result in manifest injustice in circumstances where it was evident that a prisoner possessed a serious mental health need, but the corrections officer relied on his lack of personal knowledge of the prisoner's prior suicide threats to ignore the situation.  In general, due to privacy, non-medical prison personnel are not permitted to look into an inmate's mental health records. *See, e.g., In re Connecticut Prison Overcrowding and Aids Cases*, NO. CIV. H-88-562(PCD), (JGM), H-80-506(JAC)), 1990 WL 261348, at *15 (¶ 51) (D. Conn. Dec. 6, 1990).  Following Defendants' rigid  interpretation of *Jean v. Barber*, 2011 WL 2975218, no prison guard could be found liable for ignoring an inmate's obvious suicide attempt if he or she had not reviewed an inmate's prior medical records.  Where prisoners plainly threaten suicide and/or engage in conduct demonstrating imminent danger to themselves, it would violate the spirit of the Eighth Amendment for corrections officers to be able to turn a blind eye and fail to secure treatment.

"sufficiently culpable state of mind" – that is, whether the official "knows of and disregards an excessive risk to inmate health or safety" under the circumstances. *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir.2005) (quoting *Farmer*, 511 U.S. at 837). *See also Caiozzo v. Koreman*, 581 F.3d 63, 65 (2d Cir. 2009) (with respect to a federal prison official's violation of a convicted inmate's right to be free from cruel or unusual punishment under the Eighth Amendment, "[i]n the wake of *Farmer* [*v. Brennan*, 511 U.S. at 837], such a defendant is liable to an injured prisoner only if he disregards a risk of harm of which he is aware, . . . and that causes the injury.") (internal quotations omitted); *Allah v. Michael*, 506 F. App'x 49, 51 (2d Cir. 2012) ("The subjective prong requires that the prison officials were aware of a substantial risk of serious harm but ignored the risk.").

Furthermore, the Northern District of New York, which decided   *Jean v. Barber*, subsequently held that there are circumstances where an inmate's pending threat or attempt at suicide in the moment provides sufficient notice to non-medical prison personnel of serious mental health needs.  *See Jones v. Rock*, No. 9:12–cv–0447 (NAM/TWD), 2013 WL 4804500, at *17 (N.D.N.Y. Sept. 6, 2013) (Plaintiff "made an adequate showing that [corrections officer] acted with deliberate indifference" by intentionally denying or delaying access to medical care where   "[i]t c[ould] reasonably be inferred from Plaintiff's Complaint that finding Plaintiff hanging in the shower placed [the defendant corrections officer] on notice that he could be a suicide risk").  Because the guard observed the detainee attempt to hang himself, the *Jones* court concluded that the prison guard's failure to "see[ ] to it that Plaintiff's apparent suicidal ideation was addressed through the [prison's] mental health system, suggests an intentional disregard of that risk."  2013 WL 4804500, at *17.

2.    *Farmer v. Brennan*

As the United States Supreme Court set forth  in *Farmer v. Brennan,* 511 U.S. 825, 844 (1994), "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."  Because "if the risk is obvious, so that a reasonable man would realize it, we might well infer that [the defendant] did in fact realize it." *Id.* (citation and internal quotations omitted).[8]  Knowledge of an inmate's prior history of mental illness (with or without specific suicide threats)  would indeed point to such a finding.  However, lack of knowledge of such a prior history alone is not determinative if the plaintiff is objectively in danger of harming himself and the obvious facts of the particular incident are sufficient to indicate a  serious mental health need.  For example, if a prison guard observes the inmate in the process of inflicting serious injuries upon himself (*e.g.*, cutting, stabbing, smothering or hanging himself) and/or hears the inmate plainly state that he is going to harm or kill himself,  the risk to the prisoner's safety may be viewed as "obvious."  Under such circumstances, the guard should be expected to summon mental health assistance.

In determining whether to dismiss a claim for deliberate indifference to serious mental health needs, "courts must evaluate whether the plaintiff has pled facts that, if true, and taken with all reasonable inferences drawn in favor of plaintiff, would demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to [the plaintiff's] health or safety," and that the defendant "was both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and ... also dr[e]w the inference.*"  Silvera v. Connecticut Dept. of Corr.*, 726 F.Supp.

---

[8]    *See also Brock v. Wright*, 315  F.3d 158, 164  (2d Cir. 2003)("Although [the United States Supreme Court in ] *Farmer* requires that a plaintiff prove actual knowledge of a risk, evidence that the risk was obvious or otherwise must have been known to a defendant is sufficient to permit a jury to conclude that the defendant was actually aware of it.") (citing *Farmer,* 511 F.3d at 842).

2d 183, 191 (D. Conn. 2010) (quoting *Caiozzo*, 581 F.3d at 72).  Moreover, for this purpose, "[s]uch

knowledge may be inferred from circumstantial evidence." *Guilbert*, 235 F.App'x at 827.  *See also*

*Sinkov v. Americor*, *Inc.*, 419 F.App'x 86, 89 (2d Cir. 2011) (regarding "deliberate indifference" to

serious mental health needs,  juries may "review[ ] *all the evidence* and draw[ ] an inference of

actual knowledge from circumstantial evidence.") (emphasis added).

In sum, the subjective element of an Eighth Amendment claim requires Plaintiff to show that

the Defendants acted with a "sufficiently culpable state of mind," *i.e.*, with "deliberate indifference

to inmate health or safety." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297

(1991)).   In this context, "[d]eliberate indifference is a mental state equivalent to subjective

recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280  (2d

Cir.2006).[9]  "Whether a prison official had the requisite knowledge of a substantial risk is *a question*

*of   fact   subject to demonstration in the usual ways*, including inference from circumstantial

evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the

very fact that *the risk was obvious*." *Phelps*, 308 F.3d at 185 (quoting *Farmer*, 511 U.S. at 842)

(emphasis added).

### 3.     Facts Presented

In the case in suit, Hartley has conceded that on September 3, 2008, "the plaintiff suffered

from a serious mental health need and that objectively speaking, the alleged deprivation was

sufficiently serious." Doc. 51-1, p. 4.  Such a concession obviated the necessity for the Court to

---

[9]  *See also  Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014)  ("This mental state  requires
that the charged official act or fail to act while actually aware of a substantial risk that serious inmate
harm will result.") (citation and internal quotation marks omitted).

engage in analysis of the *objective* prong.[10]

With respect to Hartley's *subjective* knowledge of Young's serious mental health needs, Young alleged that he held the status of  "a mental health level 3 prisoner who often needs intervention from the mental health unit . . . within the 'NCI'" Doc. 37 (Second Amended Complaint), ¶8.   Hartley had been employed at NCI as a Correction Officer for approximately two years prior to September 3, 2008, and  was on duty in the control pod of 1 East Unit, where Young was housed on the evening of  September 3, 2008.  *See* Doc. 45-15 (Hartley Affidavit), ¶¶ 2-3. Young testified at his deposition, and Hartley conceded for purposes of summary judgment, that on September 3, 2008, at approximately 9:15 p.m., Young phoned Hartley and  informed him that

---

[10] Moreover, on summary judgment, Defendants presented the Court with evidence that Young has had a long history of mental illness, including prior suicide threats while incarcerated at NCI.   Such evidence demonstrated that prior to September 3, 2008, prison psychiatrists had diagnosed Young as suffering from post-traumatic stress disorder, borderline personality disorder and anti-social personality disorder. Doc. 45-6.  These psychiatrists prescribed medication for Young in an effort  to treat these conditions.  *See, e.g.*, *id.*, p. 16-17.   In addition, Young's medical and mental health records reflect that he had made prior attempts and threats to commit suicide.  Doc. 45-8, p. 7.

It thus follows that even if Hartley had not conceded the objective prong of deliberate indifference to Young's serious mental health needs, there is ample support in the Second Circuit for this Court to find that such a serious mental health need existed.  *See, e.g.*, *Barnes v. Ross*, 926 F. Supp. 2d 499, 506 (W.D.N.Y. 2013) ("A propensity to attempt suicide or harm oneself is undoubtedly a serious medical condition, as are the health effects that allegedly flow[ ] from . . . mental illness, such as lacerations from cutting and hanging); *see also Jones v. Rock*, No. 9:12–cv–0447 (NAM/TWD), 2013 WL 4804500, at *15 (N.D.N.Y. Sept. 6, 2013) (same); *Loadholt v. Lape*, No. 9:09–CV–0658 (LEK/RFT), 2011 WL 1135934, at *3 (N.D.N.Y. Mar. 3, 2011) ("This Court, in accord with multiple decisions in this Circuit, recognizes that allegations of mental illness, especially when accompanied by suicidal ideation, state a plausible claim that Plaintiff's mental health needs were sufficiently serious."); *Allah v. Kemp*, No. 9:08–CV–1008 (NAM/GHL), 2010 WL 1036802, at *6, n. 9 (N.D.N.Y. Feb.25, 2010) ("courts have found that depression with suicidal ideation, or severe anxiety attacks are sufficiently severe conditions to meet the objective element of the deliberate indifference standard").

Young was feeling suicidal and needed to speak to personnel in the mental health unit.[11]  Doc. 45-3, p. 12.  Young plainly testified: "[I] [t]old him that I [was] feeling suicidal and needed to speak to mental health."  Doc. 45-3, p. 12.  In response, Hartley allegedly stated, "All right, and hung up." *Id.*

By affidavit, Hartley admitted that he is "required to log and report to the shift supervisor and the mental health unit any information that suggests the risk of inmate suicide."  Doc. 45-15, ¶ 4 (citing Northern CI Post Orders, 8.14.1 Suicide Prevention).   Yet, he "did not make any entry concerning Inmate Cedric Young on September 3, 2008."  *Id.*, ¶ 5. In conceding his lack of action, Hartley impliedly admitted that if, as Young alleges, Young called him voicing suicidal thoughts, Hartley should have logged Young's suicide threat and reported it to a shift supervisor.

 Based on the facts presented, the Court concluded that there is a genuine issue of material fact as to whether Hartley was subjectively aware of and ignored Plaintiff's serious mental health needs on September 3, 2008.   Specifically, "there remains an issue of fact as to whether Young's comments to Hartley regarding his suicidal feelings on September 3, 2008, put Hartley on actual notice of a serious risk of suicide."  Doc. 50, p. 17.  Hartley  may have  noted a sense of urgency or emotional distress in Young's voice or chosen words during the phone call.   After all, Young expressed his suicidal feelings and requested to speak to mental health personnel.  Doc. 45-3, p. 12. Hartley may have also recognized Young's continuing desperation in repeatedly (and unsuccessfully) pressing the call button to speak to Hartley when no mental health staff arrived at his cell. *Id.*, p. 13. In sum, Hartley may have been placed on sufficient notice that Young could be a suicidal risk or, at

---

[11]  *See* Doc. 45-2, p. 10 n.1 (Although Hartley "maintains the plaintiff never contacted him during the evening of September 3, 2008, . . . [t]he defendants stipulate to the plaintiff's version of the facts for purposes of this motion only.").

the least, a potential risk of seriously harming himself .

Although Defendants may now contend that, "as a non-medical employee," Hartley was oblivious to Plaintiff's entire extensive mental health history at NCI, Hartley himself has never so stated.[12] It appears that Hartley may have known Young had a troubled mental health history, even if he did not know of any particular suicide attempts.[13] If Hartley had general knowledge of that history, which one might infer from his position as custodian of the 1 East Control Pod Officer Log Book, that fact could ultimately bolster a finding of "deliberate indifference" on his part but would not be the only relevant fact for such a finding. On the night in question, Young's actual suicide threats may have caused Hartley to subjectively recognize Young's serious mental health needs. As the Supreme Court explained in *Farmer*:

> While the obviousness of a risk is not conclusive and a prison official may show that the obvious escaped him, . . . , he would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist . . .

511 U.S. at 843, n.8.[14]

---

[12]  The Court notes that although Hartley took the trouble to prepare and file his Affidavit [Doc. 45-15] in support of Summary Judgment, Hartley never averred that he did not know of any of Young's previous suicide attempts or episodes of serious mental health problems. He admitted that as of March 2011, he had been a Correction Officer assigned to NCI for five years, Doc. 45-15, ¶ 2, but neither confirmed nor denied knowledge of Young's long-standing history of mental illness. Rather than presenting the Court with proof that Hartley had no such knowledge, Defendants simply contend that there is *no proof* that he knew.

[13]  As set forth *supra*, at n. 12, Hartley had been employed at NCI as a Correction Officer for approximately two years prior to September 3, 2008. *See* Doc. 45-15 (Hartley Affidavit), ¶ 2. He was also the "custodian of [NCI's] 1 East Control Pod Officer Log Book and was responsible for maintaining this record." *Id.*, ¶ 3. In that position, he was responsible for logging suicide risks and reporting them to his shift supervisor and the mental health unit. *Id.*

[14]  For example, given Young's expressed suicidal feelings to Hartley on September 3, 2008, Hartley would not escape liability if the evidence showed that he merely refused to verify

At this time, considering the evidence in the light most favorable to the non-moving party, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in [plaintiff's] favor," *Donnelly v. Greenburgh Cent. School Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012), there remains a genuine issue of material fact:  whether Hartley, during his phone call from Young,  recognized Young's serious mental health needs on September 3, 2008.[15]  This issue will be resolved at trial upon examination of all relevant evidence.  The Court finds no basis to reconsider or alter its ruling declining summary judgment on this claim.

## B.    Williams

With respect to Officer Williams, Defendants' present motion for reconsideration takes issue with  the Court's statement that in Defendants' summary judgment motion, they did not address "whether [Williams] was deliberately indifferent to [the Plaintiff's] serious mental health needs." Doc. 51-1, p. 5 (quoting Doc. 50, p. 19).  Specifically, Defendants argue that they "did address this issue in their summary judgment brief with the simple explanation that the plaintiff disavowed any such claim at the time of his deposition and, consequently, the only issue was whether Officer

---

underlying facts that he strongly suspected to be true (*i.e.*, prior mental health episodes by Young), especially where Hartley was the custodian of the book for logging suicide risks.

[15]   With respect to this issue, the Court clarifies  that when it stated that "no evidence demonstrates whether Hartley knew about any prior threat or attempts to commit suicide by Young," the Court meant that, on summary judgment, no evidence presented definitively demonstrates knowledge of *particular threats or attempts of suicide*.  Nonetheless, from the evidence presented, one could infer that Hartley likely had knowledge of Young's longstanding mental illness and repeated need for mental health assistance at NCI in light of Hartley's position as Corrections Officer at NCI and custodian of NCI's 1 East Control Pod Officer Log Book.  At trial, an examination of that log book might confirm occasions when Hartley logged Young's previous suicide threats or needs for mental health intervention.  *See* n. 12-13, *supra*.

18

Williams was deliberately indifferent to the plaintiff's serious *medical* needs." Doc. 51-1, p. 5
(quoting Doc. 45-2, p. 14) (emphasis added).

Defendants further claim that "[i]n any event, the plaintiff never pressed a claim against
Officer Williams for deliberate indifference to serious mental health needs" because in the Second
Amended Complaint, Plaintiff included "only a claim of deliberate indifference to serious *medical*
needs." Doc. 51-1, p. 5 (emphasis added).  In support of this argument, Defendants cite two specific
portions of the Plaintiff's Second Amended Complaint: (1) the  heading above the claims against
Officer Williams entitled, "Deliberate Indifference/Failure to Prevent And Protect From Self-
Harm/*Denial of Medical Care*," *id*. (quoting Doc. 37, p. 6) (emphasis added by Defendants); and (2)
Plaintiff's allegation that Williams failed "to assist the plaintiff with prompt *medical* attention," Doc.
51-1, p. 6 (citing Doc. 37, p. 7, ¶ 13) (emphasis added).

Defendants argue alternatively that "[t]o the extent the pleading [Second Amended
Complaint] is ambiguous and may be read to imply a cause of action for deliberate indifference to
serious mental health needs," Plaintiff's deposition testimony proves otherwise. Doc. 51-1, p. 6.  In
particular, Defendants point out that "the plaintiff testified at this [sic] deposition that, with respect
to his interaction with Officer Williams:

> [At] this time mental health was irrelevant, you know what I'm saying? I have blood
> coming down my arm. l am already cut. I have contraband in my hand, *mental health
> is irrelevant*.   Now it is a medical issue."

*Id*. (quoting Young Deposition, Doc. 51-1 (Ex. B), at p. 14-15) (emphasis added by Defendants).

Defendants also present Plaintiff's deposition testimony that "when asked to recall what he
requested of Officer Williams, Young testified: 'I asked him, um, I need medical. I mean –
everything. I don't got to say too much, but I did ask  for medical.'" Doc. 51-1, p. 8 (quoting Young

Deposition, Doc. 51-1 (Ex. B), at p. 15-16).  Defendants also point out that when asked the question: "And so you didn't ask [Officer Williams] about mental health, you asked for medical?," Young responded, "Yes."   Doc. 51-1, p. 8 (quoting Young Deposition, Doc. 51-1 (Ex. B), at p. 17).

1.       **Allegations in Second Amended Complaint**

With respect to Defendants' arguments regarding Young's language in his Second Amended Complaint, the Court finds that Defendants have interpreted that language too narrowly in an attempt to exclude "mental health" needs from the allegations regarding "medical" needs.  The Second Circuit has repeatedly advised leniency and liberality in construing pleadings filed by *pro se* litigants. *See, e.g.*, *Boykin v. Keycorp*, 521 F.3d 202, 214 (2d Cir. 2008) ("A document filed *pro se* is to be liberally construed . . . [and] must be held to less stringent standards than formal pleadings drafted by lawyers") (internal quotations and citation omitted)*. See also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) ("It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants."); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (where one party is proceeding *pro se*, the Court "must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest") (internal quotations and citation omitted).

Particularly with respect to complaints, the Second Circuit has reminded district courts that "pro se litigants . . . cannot be expected to know all of the legal theories on  which they might ultimately recover" so that "[i]t is enough that they allege that they were  injured, and that their allegations can conceivably give rise to a viable claim." *Phillips v. Girdich*,  408 F.3d 124, 130 (2d Cir.2005).   A court must therefore allow its "imagination [to] be limited only by [the plaintiff]'s factual allegations, not by the legal claims set out in his pleadings." *Ford v. New Britain Trans. Co.*,

20

Case No. 3:03cv150 (MRK), 2005 WL 1785269, at *1 (D.Conn. July 26, 2005) (quoting *Phillips*,

408 F.3d at 130).

Applying the Second Circuit's liberal and lenient approach to Plaintiff's Second Amended

Complaint, the Court finds the language contained therein to be broad enough to encompass the

claim of deliberate indifference by Williams to Plaintiff's serious *mental health* needs. The multi-

part heading that Defendants emphasize – "Deliberate Indifference/Failure to Prevent And Protect

From Self-Harm/Denial of Medical Care" – may reasonably be interpreted in total to include

deliberate indifference to serious mental health needs. The phrase "deliberate indifference" in

conjunction with "failure to prevent and protect from self-harm" suggests a deliberate disregard of

Plaintiff's inclination to harm himself; and such an inclination may indicate serious mental health

needs. Also, the heading "Medical Care" can include mental health care, which is actually a form

or specialty of medical care.

With respect to Young's allegation that Williams failed "to assist the plaintiff with prompt

medical attention," Defendants' interpretation is once again excessively narrow, deeming "medical"

attention and "mental health" care mutually exclusive. Granted, Plaintiff allegedly exhibited physical

abrasions on his arms, requiring the application of ointment, a particular form of medical attention.

However, the alleged abrasions resulted from his own attempts to cut his arms with a broken battery

casing, behavior suggesting his need for mental health care. Construing the language of Plaintiff's

Second Amended Complaint liberally, as this Court is obligated to do, Young has alleged deliberate

indifference to both his serious medical and mental health needs.[16]

---

[16] Plaintiff's choice of words may also reflect a knowledge that his treating psychiatrists, who prescribed medication for his various mental health disorders at NCI, were in fact *medical* doctors.

21

The Second Circuit has explicitly recognized that "medical care" encompasses "mental health care" in this context, holding that "denial of medical care" with respect to "deliberate indifference" encompasses psychological problems. *See, e.g.*, *Atkins v. County of Orange*, 372 F.Supp.2d 377, 408 (S.D.N.Y. 2005) ("In the Second Circuit, psychiatric or mental health care 'is an integral part of medical care' and falls under the rule laid out in *Estelle* which requires that such care be provided to prisoners.") (quoting *Langley v. Coughlin*, 888 F.2d 252, 254 (2d Cir.1989)).[17] *See also Guglielmoni v. Alexander*, 583 F.Supp. 821, 826-27 (D.Conn. 1984) ("deliberate indifference standard of *Estelle* is equally applicable to the constitutional adequacy of psychological or psychiatric care provided at a prison;" and "the eighth amendment reaches psychiatric care as a component or aspect of medical care") (citations and internal quotation marks omitted).  After all, mental health care is a subset, or specialty, of medical care. It thus follows that deliberate indifference by a prison official to an inmate's attempt to harm himself falls squarely within the *Estelle* standard.

### 2.    Plaintiff's Deposition Testimony

The Court is also unpersuaded by Defendants' assertion that Young's deposition testimony essentially "disavowed" his claim against Williams for deliberate indifference to serious mental health needs.  The fact that Plaintiff acknowledged that, at one particular moment, he was in need of medical care for bleeding abrasions does not eliminate his need for mental health care when Williams approached on September 3, 2008. Throughout his encounter with Williams, Plaintiff

---

[17] As this Court explained in its prior Ruling [Doc. 50], in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), the United States Supreme Court set forth the standard for recovery in cases of deliberate indifference by prison officials to a prisoner's serious medical needs, holding that such indifference constitutes cruel and unusual punishment in violation of the Eighth Amendment.

displayed self-inflicted abrasions, products of his emotional distress.   From the facts presented, his needs at the time may have shifted back and forth between, and were likely a combination of, physical/medical and emotional/mental health.

Furthermore, when requesting "medical care" from Williams, Plaintiff also testified that he asked for,  in his own words, "everything." Doc. 51-1, Ex. B, p. 15-16.  Then in answer to the followup  deposition question, "[S]o you didn't ask about mental health, you asked for medical?," Young gave a literal, confirmatory response, "Yes" – *i.e.*, that is what he asked for at that particular time.  Considered together, these two statements do not conflict.   Plaintiff testified  that  he told Williams that he "need[ed] medical" and thereby "mean[t] everything;" and "Yes," that is what he asked for at that moment.   Such statements do not, in and of themselves,  disavow his claim regarding serious mental health needs. Defendants' attempt to carve out and thereby eliminate Plaintiff's claim for serious mental health needs is overly simplistic and incorrect  when viewed in totality with Plaintiff's allegations regarding his encounter with Williams on September 3, 2008.

As a *pro se* litigant,   Plaintiff cannot be expected to speak with precise legalese.  He may be unable to discern when counsel's framing of questions, permissibly leading in this context, are achieving the purpose of ushering the Plaintiff to the brink of an unfamiliar legal  precipice, or boxing him into an inadequate description of the scope of his claims.  In such circumstances, *pro se* Young cannot be imputed with knowledge of subtle nuances of legal vocabulary, such as "medical" versus "mental health," especially when one term is commonly used to encompass the other.

In sum, the Court finds no factual matters  meriting reversal of its prior Ruling that Officer Williams is not entitled to judgment as a matter of law with respect to Plaintiff's claims of deliberate indifference to serious mental health needs.  That claim will remain pending.

23

## V. **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Reconsideration [Doc. 51] is denied. Defendants have failed to present "controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court," *Shrader*, 70 F.3d at 257. The Court has properly denied summary judgment with respect to Plaintiff's claims against Hartley and Williams for deliberate indifference to serious mental health needs. Doc. 50.

As to Officer Hartley, Defendants have argued for reconsideration based on *non-binding* authorities and have construed their reasoning in a manner this Court finds unpersuasive. Granted, prior suicide threats or attempts may be probative of whether there exists an objectively "strong likelihood" of self-harm. However, knowledge of particular threats or attempts is but one of numerous facts to be considered when determining whether prison guards were subjectively aware of an excessive risk to an inmate's health and safety. Otherwise, an inmate could openly engage in self-injurious behavior and voice suicidal ideation in front of prison guards, who could then disregard such behavior with impunity, claiming that, to their knowledge, the inmate had never made a *previous* attempt at suicide. Such a holding would fly in the face of reason, destroying the intended protection of the Eighth Amendment in this context.

As this Court has previously held, viewing the facts presented in the light most favorable to Young, considering that he informed Hartley of his suicidal feelings and urgent need to speak with mental health personnel, there remains a genuine issue of material fact as to whether Hartley had a sufficiently culpable state of mind. Specifically, was Hartley deliberately indifferent to Young's serious mental health needs when Hartley simply hung up the phone after speaking with Young on

September 3, 2008?

With respect to Officer Williams, Defendants have pointed to other "matters" for reconsideration – language in Plaintiff's Second Amended Complaint and deposition testimony — narrowly interpreting such language as evidence of Plaintiff's complete disavowal of his "mental health needs" claim. Viewed through an appropriately liberal and lenient lens for a *pro se* litigant, the Court finds that such language fails to exclude Young's "mental health" needs claim.

After careful review of the authorities and facts Defendants have presented, pursuant to the Second Circuit's strict standard for reconsideration, the Court finds no adequate grounds – no controlling decisions or data that the Court overlooked – to warrant reconsideration of its prior Ruling [Doc. 50]. Accordingly, Young's claims against defendants Hartley and Williams for deliberate indifference to serious mental health needs survive summary judgment.

As the Court stated in its prior Ruling, the remaining claims in this action include: "(1) those claims against defendants Hartley and Williams in their individual and official capacities for deliberate indifference to mental health needs; and (2) the requests for declaratory and injunctive relief pertaining to the claim of deliberate indifference to mental health needs against defendants Salius, Rose, Light, McGill and Choinski in their official capacities." Doc. 50, p. 32-33. Because these claims are now ripe for trial, the parties are each directed to file a pre-trial memorandum, consistent in form with this Court's applicable standing order, within thirty (30) days following entry of this ruling – on or before October 16, 2014.[18]

---

[18] Because Plaintiff is *pro se* and incarcerated at the present time, individual memoranda will be more feasible for the parties to prepare than a joint memorandum. Each party should follow the general format for joint trial memoranda, as set forth on this Court's website, but refrain from including stipulations and jointly proposed findings of fact and conclusions of law.

Alternatively, if the parties wish to consider settlement before trial, they may promptly file a joint motion for referral to a magistrate judge for the purpose of a settlement conference.

The foregoing is SO ORDERED.

Dated: New Haven, Connecticut
       September 16, 2014

                                        /s/Charles S. Haight, Jr.
                                        CHARLES S. HAIGHT, JR.
                                        Senior United States District Judge

26